CLARK v. NAUFEL.

1. AUTOMOBILES—NEGLIGENCE—SPEED—OBSERVATION—EVIDENCE.
   Evidence as to eastbound defendant's negligence in proximately causing intersection accident was sufficient to present matter for consideration of jury, where, at a place where speed was limited to 35 miles an hour, defendant testified he was going 25 to 30 miles an hour, southbound plaintiff that defendant's speed was 55 to 60 miles an hour, and a disinterested witness testified that defendant stated shortly after accident he had failed to see plaintiff as she crossed in front of defendant because he was watching a truck standing at the southeasterly part of the intersection.

2. SAME—CONTRIBUTORY NEGLIGENCE—OBSERVATION—EVIDENCE.
   Southbound plaintiff was not guilty of contributory negligence as a matter of law, where she stopped as she approached north side of divided east and west highway in which the 36-foot lanes for traffic were separated by traffic island 38 feet wide and again stopped as her car came to south edge of island and saw no traffic approaching from right until after her second look in that direction when she was midway across eastbound lane, as it does not appear plaintiff failed to make a proper observation of approaching traffic while crossing the intersection.

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur, Automobiles, § 259 et seq., §§ 297, 689.
[2] 5 Am Jur, Automobiles, §§ 431, 715.
[3] 5 Am Jur, Automobiles, § 740; 53 Am Jur, Trial, § 555.
[4] 30 Am Jur, Judgments, § 220.

3. Same—Contributory Negligence—Observation—Instructions.
   Portion of instruction relative to plaintiff motorist's freedom from contributory negligence, in making such observation as she could make, when taken in connection with portion immediately following, did not mislead jury as to applicable law.

4. Judgment—Estoppel.
   Judgment for plaintiff in action against plaintiff herein, necessarily based on finding that plaintiff herein was guilty of negligence proximately causing accident would not estop action arising out of same accident by plaintiff herein against husband of plaintiff in the other action because of such judgment, since the same parties or their privies were not the same litigants as in the other case and the record was presumably different in the two cases.

Appeal from Wayne; Maher (Thomas F.), J. Submitted June 14, 1950. (Docket No. 27, Calendar No. 44,781.) Decided September 11, 1950.

Case by Grace W. Clark against James C. Naufel for injuries sustained in an automobile accident. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Edward N. Barnard,* for plaintiff.

*Alexander, Cholette, Buchanan, Perkins & Conklin* (*Robert E. Fox,* of counsel), for defendant.

North, J. This is an intersection automobile accident case. On trial by jury plaintiff had verdict and judgment thereon. Defendant James C. Naufel has appealed. Plaintiff's case against defendants Sanford was dismissed by stipulation.

The collision occurred in the afternoon of June 30, 1945, at the intersection of Wyoming avenue and West Outer Drive, in the city of Detroit. Both streets are paved. There were no abnormal conditions as to pavement, weather, or traffic. Wyoming

avenue extends north and south and intersects West Outer Drive at right angles. Plaintiff was proceeding south on Wyoming, while defendant was approaching the intersection from the west on Outer Drive, which just west of the intersection is divided into a west lane of traffic 36 feet wide and an east lane of traffic 36 feet wide. The east and west lanes of traffic at this intersection are divided by so-called islands. This intervening island space is about 38 feet in width. At the trial it was assumed that the southerly or eastbound portion of Outer Drive was divided into 3 equal lanes for traffic, each 12 feet wide.

Plaintiff testified that as she approached the intersection from the north she stopped and made an observation for traffic when at the north curb line of Outer Drive. Then she proceeded, crossed the northerly or westbound traffic lane of Outer Drive to a point where the island would be at her right and the front of her car about even with the southerly edge of the island. There she stopped a second time and made an observation to her right. At this point she had a view to her right of 100 to 125 or 150 feet, and it might have been a little more. Shrubbery on the island space obstructed further view at this point, and plaintiff's view was also restricted in consequence of a curve to the north in the highway about 275 feet to the west of plaintiff's position. A further material circumstance disclosed by the record is that when defendant's automobile was first observed by plaintiff he had proceeded only about 200 feet after he had rounded the curve in Outer Drive. If, as some of the testimony disclosed, defendant was driving 55 to 60 miles per hour, at most his car had been within plaintiff's possible range of vision only 2 or 3 seconds. Plaintiff, after looking and seeing no approaching traffic, started to cross the southerly portion of Outer Drive, and she testi-

fied: "I should judge I had extended into the southerly section of Outer Drive probably 16 or 18 feet before I made the second observation," which would bring the front of her car into the middle of the 3 eastbound lanes. Then, when plaintiff's car was moving 5 to 8 miles per hour, she saw the Naufel car approaching on her right about 75 feet away, and being apprehensive that an accident might occur, plaintiff, as she testified, "thought it was my best bet, my best judgment I could use was to get the rest of the way across the street, which I attempted to do." She testified that she "took a good look" at the approaching Naufel car and estimated its speed at 55 or 60 miles per hour.

As plaintiff's car was approximately three-fourths of the way across the southerly or eastbound portion of Outer Drive it was struck on the right-hand side "slightly to the rear of the car." The impact caused plaintiff's car to veer somewhat to the east from its southerly course and toward a truck standing at the southeast corner of this intersection with which it collided, and when it came to rest plaintiff was found by the truck driver underneath her car. Plaintiff sustained serious personal injuries and also damage to her car.

DEFENDANT'S NEGLIGENCE. A QUESTION OF FACT. Defendant's contention that there was not sufficient evidence of negligence on his part to go to the jury is not maintainable. The maximum rate of speed at the point of accident was 35 miles per hour. Defendant testified he was going 25 or 30 miles per hour; but plaintiff testified that just prior to the impact of the 2 cars she saw defendant's car approaching about 75 feet to her right at an estimated speed of 55 to 60 miles per hour. And perhaps a matter more persuasive with the jury was that if defendant was driving only 25 or 30 miles per hour

as he testified and had been keeping a proper look-out, he would have observed plaintiff's car at the intersection in time to avoid the accident, and in failing to do so he was negligent. Further, there is the testimony of a disinterested witness, Nelson H. Freeman, who was operating a truck which was standing at the southeasterly corner of this intersection, with which truck plaintiff's automobile collided as a result of being struck by defendant's car. Witness Freeman testified that immediately following the impact defendant Naufel "leaped from his car * * * and he hollered rather loudly, several times as a matter of fact, 'My God, I didn't see her, I was watching the truck.'" This latter testimony might also have indicated to the jury that defendant was guilty of negligence in failing to make proper observation as he was approaching the intersection. The issue of whether there was testimony of negligence on the part of defendant which was a proximate cause of the collision between these 2 cars was a question of fact for the jury's determination.

PLAINTIFF'S CONTRIBUTORY NEGLIGENCE. A QUESTION OF FACT. We are not in accord with defendant's contention that under the record in this case the trial court should have held that plaintiff was guilty of contributory negligence as a matter of law. The issue of plaintiff's contributory negligence centers on the question of her having taken reasonable care in making observation of approaching traffic before and at the time of crossing the southerly or eastbound lane of traffic on Outer Drive. On this phase of the case we note the following from the record. Plaintiff testified that when her automobile was opposite the island to her right:

"My car had come to a complete stop and I shifted again, shifted gears into first like I always did, then I attempted—then I shifted into second and as I was

looking again, this car was coming. I started to complete the crossing of the southerly portion of Outer Drive. * * * I should judge I had extended into the southerly section of Outer Drive probably 16 or 18 feet before I made the second observation. * * * I thought it was my best bet, my best judgment I could use was to get the rest of the way across the street, which I attempted to do. * * * Just as I told you, I stopped, I shifted gears and started on my way. Then I turned and looked again to the west, when I saw the car bearing down on me. * * * I looked and I shifted gears and started out; then I looked again. * * * I shifted gears and then just as I am going across the street, I turned around and looked again. Naturally, I had to be cautious of that traffic going east."

On cross-examination plaintiff also testified:

"*Q.* During the time that you are [were ?] moving that 16 feet toward the south, you were looking toward the south, then you looked back towards the right and saw him?

"*A.* I glanced and then looked west and saw him coming. Does that answer that?

"*Q.* And you continued looking south until you got in the center lane, is that right?

"*A.* I would not say that. No. I would not say that, because I kept my eyes on the west and was shifting gears and glanced naturally in front of me, and then turned and looked to the west again. * * * While I was looking, I kept looking to the west, naturally, I knew at that time it (traffic) was going to go east."

In the light of the foregoing and of attendant circumstances noted earlier herein, it cannot be said that plaintiff was guilty of contributory negligence as a matter of law in that she failed to make a proper observation of approaching traffic as she proceeded across the intersection. The trial judge correctly refused to direct a verdict against plaintiff on the

ground that she was guilty of contributory negligence as a matter of law. Instead in this respect an issue of fact which was submitted to the jury was presented.

ALLEGED ERROR IN THE CHARGE OF THE COURT. A somewhat lengthy and a fairly clear charge to the jury was made at the trial of this case. By lifting 2 separate and rather short statements out of the context of the charge, defendant asserts error. We are not able to find that the portions of the charge of which complaint is made constitute prejudicial error justifying reversal, especially when construed in the light of the charge as a whole. The first of the 2 portions of the charge of which defendant complains is as follows:

"Members of the jury, the plaintiff has testified that prior to entering the easterly (southerly) section or portion of Outer Drive, she looked to the west so far as she could see and saw nothing coming. I charge you that, such being the case, she was acting as a reasonably prudent person would have acted under like or similar circumstances; she is not required to wait indefinitely before proceeding and until traffic going in an easterly direction clears the bend in the road, and therefore, she is free from any negligence or contributory negligence, if you find that to be a fact. *Members of the jury, was she acting as a reasonably prudent person? That is the test for you to apply. Did she look and if she looked, it is the law, members of the jury, that she should see the objects that are there to be seen.*"

By omitting from the context of the charge the portion above italicized, and numerous other relevant portions of the charge, defendant argues that in effect the court said to the jury, "all the plaintiff had to do was to look and if she did she could proceed and in so doing was free from negligence or contributory negligence." We are satisfied that the

jury was not misled by the above instruction as to the law in the light of which decision was to be reached.

We have given consideration to defendant's second criticism of the charge to the jury but find it without merit, when taken in connection with the charge as a whole. We are satisfied that this portion of the charge did not mislead the jury to the detriment of defendant.

Affirmative Defense of Estoppel. Defendant sought but was refused permission to file a supplemental answer wherein it would be pleaded that plaintiff's right to recover was barred by "estoppel by judgment." This theory of a defense in the instant case arose from the following circumstances. Defendant's wife, Rosemary Naufel, as a passenger in defendant's car, was injured in the collision involved in the instant case. In consequence Mrs. Naufel brought suit against Grace W. Clark, plaintiff herein, in the circuit court of Oakland county. In the Oakland county suit plaintiff recovered a judgment against the plaintiff herein, which was satisfied, while the instant suit was pending. While it is true decision in the Oakland county case must have been based upon a finding of fact that Grace W. Clark, plaintiff herein, was guilty of negligence which was a proximate cause of the accident involved in the instant case, nonetheless that circumstance could not successfully be urged as estoppel barring plaintiff's right to recover in the instant case. This is true because the same parties or their privies were not the same litigants involved in the respective cases; and the record made in the respective cases presumably may be very different. The ruling of the trial court touching the matter now under consideration was proper.

The judgment entered in the circuit court is affirmed, with costs to appellee.

BOYLES, C. J., and REID, DETHMERS, BUTZEL, CARR, BUSHNELL, and SHARPE, JJ., concurred.